FILED IN OPEN COURT
ON 12-20-17 BRH
Peter A. Moore, Jr., Clerk
US District Court
Eastern District of NC

WMG

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CR-411-1(3)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | INDICTMENT |
| | ) | |
| STEPHEN CONDON PETERS | ) | |

The Grand Jury charges that:

## I.  INTRODUCTION

1.    VisionQuest Capital LLC (hereinafter "Capital LLC") was a North Carolina company that purported to provide "growth and expansion capital" to companies located primarily in the Southeast.  Capital LLC solicited funds from investors under the auspices that the funds would be invested into businesses that generated recurring revenue or had a strong likelihood of being able to generate regular cash flow.  Capital LLC funded its investment activities through debt financing from individual clients.

2.    VisionQuest Wealth Management LLC (hereinafter "Management LLC") was a North Carolina company that purported to provide financial planning and management services to clients in exchange for a fee.

1

3. VQ Wealth LLC (hereafter "Wealth LLC") was a North Carolina corporation that operated as a parent or holding company for Management LLC and Capital LLC.

4. STEPHEN CONDON PETERS was an individual who resided and did business in Wake County within the Eastern District of North Carolina. Peters was a Registered Investment Advisor (RIA) with the United States Securities and Exchange Commission (SEC). Peters owned and operated the Wealth LLC, Management LLC, and Capital LLC entities (referred to collectively herein as "VisionQuest")

5. Although Wealth LLC, Management LLC, and Capital LLC were separate legal entities, PETERS operated the businesses collectively as "VisionQuest" from his business offices, most recently located at 112 East Hargett Street in Raleigh, North Carolina. With respect to Wealth LLC, Peters owned a 69% interest and his wife owned a 31% interest. Wealth LLC owned a 100% interest in Management, LLC. Wealth LLC owned a 99% interest in Capital LLC. An investor owned the remaining 1% interest in Capital LLC.

6. As a Registered Investment Advisor, by law, PETERS had a fiduciary duty to the clients of Management. This means that PETERS:

(a) had a fundamental obligation to act in the best interests

2

of his clients and to provide investment advice in his clients' best interests;

(b) owed his clients a duty of undivided loyalty and utmost good faith;

(c) was prohibited from engaging in any activity in which PETERS had a conflict of interest;

(d) was obligated to employ reasonable care to avoid misleading clients, and to provide full and fair disclosure of all material facts to clients and prospective clients; and

(e) was prohibited from using his clients' assets to his own benefit and the benefit of other clients without their express consent.

## II.    FRAUDULENT SALE OF VISIONQUEST CAPITAL LLC NOTES

7.    Beginning in 2009, and continuing into 2017, Peters orchestrated the sale of VisionQuest Capital LLC promissory notes (the "Capital LLC Notes"). PETERS, both directly and through subordinate advisors at Management LLC, marketed and sold the Capital LLC Notes primarily to clients of Management LLC. In total, during this time period, PETERS sold not less than $15 Million worth of Capital LLC Notes. Most of the individuals who purchased the Capital LLC Notes were clients of Management LLC.

3

8. In exchange for an investment of funds, the Capital LLC Notes purported to promise investors an 8% annual return on principal. The Capital LLC Notes paid interest to investors on a monthly basis. The Capital LLC Notes generally provided a 5 year term of interest, after which the investors' principal funds were to be repaid. If an investor agreed to reinvest, rather than receive a disbursement of interest, the investor was promised a 9% rate of return.

9. In connection with the sale of the Capital LLC Notes, PETERS represented and caused to be represented to investors that the Capital LLC Note proceeds would be invested into revenue-generating or income-producing businesses.

10. In fact, PETERS stole large portions of the investor proceeds and carried out a "Ponzi" scheme on investors. The term "Ponzi scheme" generally refers to a fraud in which investor principal and interest payments are funded by new principal investments of others, rather than by a genuine return on principal investments. In Ponzi schemes, investment funds are frequently diverted to the personal use of the scheme manager, rendering those funds unavailable for genuine investment and revenue generation.

11. To carry out the scheme, PETERS, by and through Wealth LLC, Management LLC, and Capital LLC, made numerous false and

4

fraudulent representations and omissions to the Capital LLC Note investors. The representations and omissions are summarized as follows:

A. The Capital LLC Note proceeds would be invested into income-producing businesses. In fact, the Capital Note proceeds were not always placed into income producing businesses. By way of example, the Capital Note proceeds were spent on PETERS's own personal interests. In other instances, the funds were used to pay the business expenses of Capital LLC, Wealth LLC, and Management LLC. In still other instances, PETERS used the Capital LLC Note proceeds to pay off prior Capital LLC Note interest and principal payments owed. PETERS did not inform investors that their principal would be used to pay interest and principal obligations to other investors. PETERS also did not inform investors that their funds would be used to fund PETERS's personal interests, or to develop PETERS's private real estate holdings, including a farm and a luxury vacation home in Costa Rica.

B. The Capital LLC Notes were a "low-risk investment." PETERS, individually and by and through Management LLC, represented to investors that the Capital LLC Notes presented little or no risk of loss, and that the income was guaranteed. In

5

fact, the Capital LLC Notes presented an extremely high risk of loss, and income was not guaranteed. PETERS withheld financial statements for Capital LLC from investors and did not inform them that Capital LLC was not generating sufficient genuine revenue to fund future interest and principal obligations associated with the Capital LLC Notes. Likewise, PETERS withheld from investors that their interest payments would be paid out of the principal investments of others.

C. <u>No fees or commissions were being drawn or paid in connection with the sale of the Capital LLC Notes</u>. PETERS, individually and by and through Management LLC, represented to investors that neither he nor his advisors received any kind of fee or commission for the sale of the Capital LLC Notes. PETERS represented that he profited from the overall success of Capital LLC, and did not extract a portion of the Capital LLC Note principal as a fee. In fact, PETERS extracted large sums of investor principal "off the top," that is, prior to the investment of the funds into income producing businesses. Likewise, PETERS promised and paid his subordinates at Wealth LLC a commission for selling the investors the Capital LLC Notes.

### III. EXAMPLES OF FRAUDULENT USES AND TRANSFERS

12. Between 2009 and 2017, after acquiring Capital LLC

6

investor funds via the fraudulent representations and omissions described above, PETERS spent the investor funds, among other things, the personal interests and pursuits of PETERS and his family, interest and principal obligations of other Capital LLC Note holders, and the operating expenses of the VisionQuest Entities. By way of example, and not by way of limitation, the following paragraphs contain particular instances of PETERS's improper uses of Capital LLC investor funds.

13. On or about October 5, 2012, investor D.D. delivered $85,000 to Capital LLC pursuant to a Capital LLC Note. Following a series of account transfers, on December 21, 2012, December 28, 2012 and January 4, 2013, approximately $65,000 of these funds were wired to PETERS.

14. On or about February 5, 2014, investor J.L. wired $100,000 to Capital LLC pursuant to a Capital LLC Note. On February 10, 2014, the funds were transferred to Wealth LLC, where $20,000 of said funds were immediately wired to PETERS. $20,000 of said funds were immediately transferred to Management LLC to pay previously incurred credit card charges. $17,000 of said funds were immediately used to pay the expenses of a prior, failed investment known as "Fusion Fund." On February 18, 2014, the remaining $40,000 was wired to PETERS.

15. On or about February 5, 2014, investor S.H. delivered $1,000,000 to Capital LLC pursuant to a Capital LLC Note. On February 25, 2014, $900,000 of said funds were transferred to Wealth LLC. Between February 25, 2014 and September 30, 2014, approximately $441,000 of said funds were wired to PETERS. Additionally, on March 3, 2014, approximately $40,000 of said funds were used towards an approximate payment of $44,000 of interest obligations to other Capital LLC Note holders. On or about April 3, 2014, $35,000 of said funds were transferred to another account to pay obligations to E.K. and R.K. relating to a prior, failed investment known as "Fusion Fund." On or about May 1, 2014, approximately $50,000 of said funds were used to pay interest obligations to other Capital LLC Note holders, as well as VisionQuest payroll and credit card expenses. On or about May 29, 2014, approximately $55,000 of said funds were used to pay interest obligations to other Capital LLC Note holders, as well as VisionQuest business and payroll expenses.

16. On or about March 13, 2014, investor A.P. delivered $50,000 to Capital LLC pursuant to a Capital LLC Note. On April 1, 2014, approximately $39,000 of these funds were used toward a payment of $44,333 of interest obligations to other Capital LLC

8

Note holders.

17. On August 21, 2015, investor M.B. wired $60,000 to Capital LLC pursuant to a Capital LLC Note. On September 1, 2015, approximately $40,000 of these funds were used toward a $52,448 payment of interest obligations to other Capital LLC Note holders.

18. On October 21, 2015, investor T.M. wired $150,000 to Capital LLC pursuant to a Capital LLC Note. On November 18, 2015, investor J.J. wired $200,000 to Capital LLC pursuant to a Capital LLC Note. On or about December 17, 2015, approximately $250,000 of said funds were used towards a $290,120 payment to pay off an existing Capital LLC Note held by investor J.Z. Approximately $59,000 of said funds were used to pay interest obligations to other Capital LLC Note holders.

19. On or about September 21, 2016, investor C.R. wired $100,000 to Capital LLC pursuant to a Capital LLC Note. On September 23, 2016, $75,000 of the funds were transferred to Wealth LLC. On September 29, 2016, $20,000 of the funds were wired to PETERS. On October 4, 2016, approximately $25,000 of the funds were used towards a $35,837 payment of interest obligations to other Capital LLC Note holders. By October 5, 2017, $55,000 was spent on VisionQuest business, payroll, and credit card expenses.

20. On or about September 29, 2016, investor A.W. delivered

9

$150,000 to Capital LLC pursuant to a Capital LLC Note. On September 30, 2016, A.T. wired $100,000 to Capital LLC pursuant to a Capital LLC Note. On or about October 3, 2016, the entire $250,000 of said funds were transferred to Wealth LLC, where $30,000 of said funds were paid to PETERS. Thereafter, approximately $70,000 of said funds were transferred back to Capital LLC, of which $60,000 was used to pay interest obligations to other Capital LLC Note holders, and approximately $7,000 of said funds were used towards a $35,000 payment of expenses associated with the construction of a luxury vacation villa in Costa Rica owned by PETERS.

21. Between December 9, 2016 and December 15, 2016, investors L.L., B.L., P.D., T.M., and L.T. collectively delivered approximately $637,000 to Capital LLC pursuant to Capital LLC Notes. On or about December 14, 2016, approximately $225,000 of said funds were used to repay an outstanding principal obligation to Capital LLC Note holder J.S. On December 16, 2016, approximately $225,000 of said funds were used to repay an outstanding principal obligation to Capital LLC Note holder M.B. On December 16, 2016, approximately $100,000 of said funds were used to pay expenses associated with the construction of a luxury vacation villa in Costa Rica owned by PETERS. On January 3, 2017,

10

approximately $55,000 of said funds were used towards a $60,920 payment of interest to other Capital LLC note holders.

22. On January 11, 2017, investor L.B. wired $101,500 to Capital LLC pursuant to a Capital LLC Note. On or about January 17, 2017, approximately $66,400 of these fund were used towards the $225,000 payoff of an existing Capital LLC Note held by investor J.S. Shortly thereafter, approximately $25,700 of the funds were used to pay expenses associated with the construction of a luxury vacation villa in Costa Rica owned by PETERS. Approximately $4,200 of the funds were used to pay interest obligations to other Capital LLC Note holders.

23. On or about February 13, 2017, investor N.H. delivered $250,000 to Capital LLC pursuant to a Capital LLC Note. On or about March 1, 2017, approximately $25,000 of said funds were used toward a $65,976 payment of interest obligations to other Capital LLC Note holders. On February 15, 2017, L.B. wired $100,000 to Capital LLC pursuant to a Capital LLC Note. On or about February 27, 2017, $325,000 of said funds were transferred to Wealth LLC, of which $15,000 of said funds were wired to PETERS. On March 2, 2017, approximately $300,000 of said funds were transferred back to Capital LLC, and approximately $119,000 of said funds were paid to investor D.D., and approximately $181,000

11

of said funds were used toward a $250,000 payment associated with the construction of a luxury vacation villa in Costa Rica owned by PETERS.

IV.  ENDEAVOR TO INFLUENCE SEC ENFORCEMENT PROCEEDING

24.  On or about March 6, 2017, the Securities and Exchange Commission (SEC) entered an order authorizing an investigation into the investment activities of PETERS, Wealth LLC, Capital LLC, and Management LLC.  This investigation is referred to herein as the "Enforcement Proceeding."  Among other things, the purpose of the Enforcement Proceeding was to investigate possible conflicts of interest relating to PETERS's sale of Capital LLC Notes to his investment advisory clients at Management.  Likewise, the Enforcement Proceeding concerned whether PETERS used the Capital LLC Note proceeds in a manner consistent with representations to investors.

25.  PETERS corruptly endeavored to influence and obstruct the Enforcement Proceeding by attempting to withhold and conceal records, by fabricating records, and by providing false testimony.

26.  In or about April of 2017, the SEC issued document subpoenas to Capital LLC.  Later, in or about May of 2017, the SEC issued subpoenas to Management LLC and Wealth LLC.  These subpoenas are referred to collectively herein as the "VisionQuest

12

Subpoenas." The VisionQuest Subpoenas were addressed to the attention of PETERS and his counsel.

27. Among other things, the VisionQuest Subpoenas directed PETERS to produce all documents concerning the sale of the Capital LLC Notes, including records of Wealth LLC, Capital LLC, and Management LLC employee calendars and communications with investors. The subpoenas further directed PETERS to produce documents concerning lawsuits and settlements. Nevertheless, PETERS attempted to have his information technology company delete various emails falling within the scope of the subpoenas. In particular, PETERS directed an information technology representative to delete emails that included the following terms: (1) the word "Capital", (2) the name of investors M.B. and A.W., and (3) the name of employees J.V. and J.G. Peters further directed the information technology representative to "wipe" the computers that originally held these emails, and to send the computers "back to the factory."

28. The VisionQuest Subpoenas also directed PETERS to produce documents reflecting each of the assets of Capital LLC. The SEC was investigating, among other things, how PETERS had spent the Capital LLC Note proceeds, and why large sums of money flowed from a Capital LLC bank account to Wealth LLC bank account. PETERS

13

fabricated and caused to be fabricated a $10 Million Revolving Promissory Note between Wealth LLC and Capital LLC, and backdated the same to June 2, 2010. This note is referred to herein as the "Revolving Note."

29. On or about July 10, 2017, Peters provided false testimony to the SEC concerning various matters under investigation in the Enforcement Proceeding, including false testimony concerning the Revolving Note, and the promise or payment of commissions in connection with the sale of the Capital LLC Notes.

30. Specifically, after being asked to identify all of the places where the Capital LLC Note funds were invested, PETERS stated that one of the largest investments by Capital LLC was a $10 million Revolving Note between Capital LLC and Wealth LLC. PETERS testified that this note was "in writing" and started somewhere between 2010 and 2012, and that the balance on the note was between $8 million and $9 million. In fact, the Revolving Note did not exist in 2010, and the Revolving Note was fabricated in or about May of 2017.

31. PETERS also gave false testimony concerning the promise and payment of commissions in connection with the sale of the Capital LLC Notes. When asked if Management LLC employees

14

received any kind of commission for selling the Capital LLC Notes, PETERS falsely testified that the employees "never received any direct commission." PETERS further testified that he only paid bonuses based upon whether Management LLC reached a quarterly or annual goal. In fact, PETERS did promise and pay direct commissions for the sale of the Capital LLC Notes.

### COUNT ONE

32. Introductory Paragraphs 1 through 31 are realleged and incorporated by reference into this Count.

33. At all times relevant to this Indictment, PETERS was an "investment adviser" within the meaning of Title 15, United States Code, Section 80b-2(a)(11).

34. Beginning at a time unknown, but no later than January of 2009, and continuing to in or about July of 2017, in the Eastern District of North Carolina and elsewhere, the Defendant, STEPHEN CONDON PETERS, doing business as VisionQuest Wealth Management LLC and VisionQuest Capital LLC, unlawfully, willfully, and knowingly, by the use of the mails and means and instrumentalities of interstate commerce, directly and indirectly, did: (a) employ devices, schemes and artifices to defraud clients and prospective clients; (b) engage in transactions, practices, and courses of business which operated as a fraud and deceit upon clients and

15

prospective clients; and, (c) engage in acts, practices, and courses of business that were fraudulent, deceptive and manipulative; all in violation of Title 15, United States Code, Sections 80b-6 and 80b-17; and Title 18, United States Code, Section 2.

## COUNT TWO

35. Introductory Paragraphs 1 through 31 are realleged and incorporated by reference into this Count.

36. Beginning at a time unknown, but no later than January of 2009, and continuing to in or about July of 2017 in the Eastern District of North Carolina and elsewhere, the Defendant, STEPHEN CONDON PETERS willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud

16

and deceit upon persons, to wit, STEPHEN CONDON PETERS, both directly and through the employees and agents of Capital LLC and Management LLC, engaged in a scheme to defraud in connection with the sale of the Capital LLC Notes; all in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 17, Code of Federal Regulations, Section 240.10-b-5.

## COUNTS THREE THROUGH ELEVEN

### THE SCHEME

37. Beginning at a time unknown, but no later than January of 2009, and continuing to in or about July of 2017 in the Eastern District of North Carolina and elsewhere, the Defendant, STEPHEN CONDON PETERS devised and intended to devise a scheme to defraud purchasers of the Capital LLC Notes, as defined in this Indictment, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

### MANNER AND MEANS

38. Introductory Paragraphs 1 through 31 are realleged and incorporated by reference into this Count.

39. It was further part of the scheme that PETERS caused some Capital LLC Note purchasers to convert their Individual Retirement Account investment holdings into Capital LLC Notes. To facilitate the acquisition of these investment funds, PETERS

17

caused the Capital LLC Notes to be held by a custodian currently known as IRA Innovations LLC, located in the state of Alabama.

39. It was further part of the scheme that PETERS caused to be transmitted correspondence, copies of Capital LLC Notes, subscription agreements, and other investment account documentation to Capital LLC Note purchasers, and to IRA Innovations LLC.

## USE OF THE WIRES

40. On or about each of the dates set forth below, in the Eastern District of North Carolina and elsewhere, the defendant, STEPHEN CONDON PETERS, for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| COUNT | DATE | WIRE |
|-------|------|------|
| 3 | 8/13/2013 | Email transmission of Capital LLC Note for victim V.N. from Capital LLC in North Carolina to IRA Innovations in Alabama. |
| 4 | 4/7/2015 | Email transmission of Buy Direction Letter for Capital LLC Note for victim R.E. from Capital LLC in North Carolina to IRA Innovations in Alabama. |
| 5 | 9/19/2016 | Email transmission of Buy Direction Letter and Capital LLC Note for victim A.T. from Capital LLC in North Carolina to IRA Innovations in Alabama. |
| 6 | 11/2/2016 | Email transmission of Buy Direction Letter and Capital LLC Note for victim B.L. from |

18

| | | |
|---|---|---|
| | | Capital LLC in North Carolina to IRA Innovations in Alabama. |
| 7 | 11/8/2016 | Email transmission of Buy Direction Letter and Capital LLC Note for victim M.D. from Capital LLC in North Carolina to IRA Innovations in Alabama. |
| 8 | 12/2/2016 | Email transmission of Capital LLC Note and account opening paperwork for victim K.C. from Capital LLC in North Carolina to IRA Innovations in Alabama. |
| 9 | 1/4/2017 | Email transmission of a copy of the driver license for victim L.B. from Capital LLC in North Carolina to IRA Innovations in Alabama. |
| 10 | 3/2/2017 | Email transmission of Buy Direction Letter and Capital LLC Note for victim M.M. from Capital LLC in North Carolina to IRA Innovations in Alabama. |
| 11 | 5/24/2017 | Email transmission of Capital LLC Note subscription agreements for victims C.N. and L.N. from Capital LLC in North Carolina to IRA Innovations in Alabama. |

Each entry in the foregoing table constituting a separate violation of Title 18, United States Code, Sections 1343 and 2.

### COUNTS TWELVE THROUGH FIFTEEN

40. Introductory paragraphs 1 through 31 are realleged and incorporated by reference into this count.

41. Beginning at a time unknown, but no later than January of 2009, and continuing to in or about July of 2017, in the Eastern District of North Carolina and elsewhere, the Defendant, STEPHEN CONDON PETERS, knowingly engaged and willfully caused others to engage in each of the following monetary transactions involving

19

criminally derived property described below, where the value of the property exceeded $10,000, and said property was derived from the Specified Unlawful Activity (SUA) identified in the table below:

| COUNT | DATE | PROCEEDS | MONETARY TRANSACTION | SUA |
|---|---|---|---|---|
| 12 | 12/21/2012 | $85,000 Capital LLC Note purchased by D.D. | $35,000 wire transfer from Wealth LLC bank account at BB&T ending in *2596 to Wells Fargo account ending in *1732 | Investment Advisor Fraud, 15 U.S.C. §§ 80b-6 and 80b-17 |
| 13 | 2/18/2014 | $50,000 Capital LLC Note purchased by J.L. | $40,000 wire transfer from Wealth LLC bank account at BB&T ending in *2618 to Wells Fargo account ending in *1732 | Investment Advisor Fraud, 15 U.S.C. §§ 80b-6 and 80b-17 |
| 14 | 2/28/2014 | $1,000,000 Capital LLC Note purchased by C.G. LLC | $260,000 wire transfer from Wealth LLC bank account at BB&T ending in *2618 to Wells Fargo account ending in *1732 | Investment Advisor Fraud, 15 U.S.C. §§ 80b-6 and 80b-17 |
| 15 | 9/29/2016 | $100,000 Capital LLC Note purchased by C.R. | $20,000 wire transfer from Wealth LLC bank account at BB&T ending in *2618 to Wells Fargo | Investment Advisor Fraud, 15 U.S.C. §§ 80b-6 and 80b-17 |

20

| | | | account ending in *1732 | |
|---|---|---|---|---|

Each entry constituting a separate violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT SIXTEEN

42.    Introductory Paragraphs 1 through 31 are realleged and incorporated by reference into this Count.

43.    Between in or about March 6, 2017, and continuing to in or about July of 2017, in the Eastern District of North Carolina and elsewhere, the defendant, STEPHEN CONDON PETERS, did corruptly endeavor to influence the due and proper administration of the law under which a pending proceeding to investigate the sale of the Capital LLC Notes by Capital LLC and Management LLC was being had before the United States Securities and Exchange Commission, by concealing records, fabricating records, and giving false testimony as described herein, all in violation of Title 18, United States Code, Section 1505.

21

## FORFEITURE NOTICE

The defendant is given notice of the provisions of Title 18, United States Code, Sections 982(a)(1) and 981(a)(1)(C) (the latter as made applicable by Title 18, United States Code, Section 2461(c)), that all the defendant's interest in the property specified herein is subject to forfeiture.

As a result of the foregoing offenses in Counts 1 through 11 and 16 of the indictment, the defendant shall forfeit to the United States any and all property, real or personal, constituting, or derived from, any proceeds the defendant obtained directly or indirectly as a result of the said offenses and, in respect to Counts 12-15, any property, real or personal, involved in such offenses, or any property traceable to such property.

The forfeitable property includes, but is not limited to:

i.  All funds, monies, and other things of value located in business account #5200822538 in the name of VisionQuest Capital, LLC at Branch Banking and Trust (BB&T), Raleigh, North Carolina;

ii.  All funds, monies, and other things of value located in the business accounts #5200802618 and 5200802596 in the name of VQ Wealth, LLC at Branch Banking and Trust (BB&T), Raleigh, North Carolina;

iii. All funds, monies, and other things of value located in

the business account #5200822511 in the name of VisionQuest Wealth Management, LLC at Branch Banking and Trust (BB&T), Raleigh, North Carolina;

iv. All funds, monies, and other things of value located in personal account #1010131401732 in the name of STEPHEN PETERS and AMY PETERS at Wells Fargo Bank, N.A., Raleigh, North Carolina;

v. Real property, together with buildings and fixtures of STEPHEN PETERS and AMY PETERS located at 5237 Theys Road, Raleigh, North Carolina 27606 and deeded in the name of Harris-Peters, LLC, 112 E. Hargett Street, Suite B, Raleigh, North Carolina 27601, STEPHEN PETERS, Manager, as more specifically described in a deed of trust recorded in Wake County, North Carolina on June 25, 2014, Book 015700, Page 01203-01213;

vi. Vacation home and rental property owned by and deeded in the names of STEPHEN CONDON PETERS and AMY MARIE PETERS, also identified as "AMY MARIE PATERS," the property also identified as "Casa de la Amada Princesa" or "The House of the Beloved Princess," located in Coco Bay, Costa Rica within the gated community of Coco Bay Estates (Lot 61), and further identified as Costa Rica Entity #3-102-657027 and Costa Rica Entity #3-102-493198;

vii. All funds, monies, and other things of value located in account #237025965236 in the name of WHISPERING HOPE FARM, LLC at

23

Bank of America, Raleigh, North Carolina;

viii. All funds, monies, and other things of value located in account #237025688254 in the name of HARRIS-PETERS, LLC at Bank of America, Raleigh, North Carolina;

ix. Farm equipment purchased new by Whispering Hope Farm, LLC, STEPHEN C. PETERS, 112 E. Hargett Street, Suite B, Raleigh, NC 27601 from Quality Equipment, LLC, Dealer #016964, 2214 N. Main Street, Fuquay-Varina, NC 27526, Account Number: 510000679370, including:

> 2012 John Deere 4520 Compact Utility Trailer, SR#1LV4520HCBH810564;
>
> 2012 John Deere 550 Gator, SR#1M0550FBJCM010995;
>
> John Deere 400x Loader, SR#1P0400XXABX029447;
>
> John Deere MX6 Rotary/Flail Cutter, SR#1P00MX6XHBP051724;
>
> Frontier D400 Post Hole Digger, SR#1XFPHDOXPCO296538; and
>
> Frontier 109 Auger, SR#1XFPHA0XJCC0297125;

x. A Horse named "Cartagena," also known as "Carty," described as a Welsh X mare, white in color, boarded at Whispering Hope Stables;

xi. A Horse named "Princess," brown in color;

24

xii. A Horse named "Hugo Boss," a 2008 Dutch Harness, chocolate colored liver chestnut with four high socks and a stripe, boarded at Whispering Hope Stables;

xiii. A 2014 Cadillac Escalade, VIN #1GYS4DEF8ER244302, titled to Stephen Condon Peters;

xiv. A 2012 Toyota Tundra Crew Max, VIN #5TFHW5F15CX2344757, titled to Whispering Hope Farm, LLC;

xv. A 2014 ADAM Horse Trailer, VIN #5CLHB1428ER025274, titled to Amy Marie Peters;

xvi. A 2016 Polaris ATV, Sportsman 450 HO, VIN #4XASEA457GA603142, motor #0120527215531, Azul (blue in color);

xvii. A 2016 Polaris ATV, Sportsman 450 HO, VIN #4XASEA450GA597751, motor #0120527213606, Verde (green in color);

xviii. Real property of STEPHEN PETERS and AMY PETERS located at Lot #1320 Ironwood Way, Ferguson, Wilkes County, North Carolina 28624 and deeded in the name of ABOVE THE QUEST, LLC, 112 E. Hargett Street, Suite B, Raleigh, North Carolina 27601, STEPHEN PETERS, Manager, as more specifically described in a deed of trust recorded in Wilkes County, North Carolina on June 06, 2016 at Book 1227, Page 450 of the Wilkes County Registry;

ixx. Real property of STEPHEN PETERS and AMY PETERS located at 108 River Bluff Drive, Jacksonville, Onslow County, North

25

Carolina 28540 and deeded in the name of VQ JACKSONVILLE, LLC, 112

E. Hargett Street, Suite B, Raleigh, North Carolina 27601, STEPHEN

PETERS, Manager, as more specifically described in a deed of trust

recorded in Onslow County, North Carolina on March 29, 2017, Book

4595, Page 354-359, Parcel Identification Number: 063267;

xx. Personal firearms owned in the name of STEPHEN C. PETERS,
5237 Theys Road, Raleigh, NC 27606, including:

Weatherby Mark V 300 Mag;

Remington 760 Pump Shotguns (2);

Remington 572 Fieldmaster Pump Shotgun;

Ithaca Ultra Featherweight;

Browning Hi Power Pistol;

Sig Sauer Pistol;

FNH FNX-9;

Mussel Loader-Ultimate;

590 Field 12 Gauge, 30 inch barrel, SR #TRBKA9623;

Colt LE6920 with two magazines;

Benelli Super Vinci, 12 Gauge, 28 inch barrel; and

Baretta 92FS, 9mm, with two 15 round magazines;

xxi. Jewelry owned in the name of STEPHEN C. PETERS, 5237
Theys Road, Raleigh, NC 27606, including:

Breitling Bentley B05 Unitime, SR #AB0521U0/A755-990A;

26

Breitling Bentley 6.75, SR#A4436412/Q569-CROCD;

Gents Breitling Watch, Stainless Steel;

Gents Breitling Watch, Super Ocean Heritage;

Ladies Breitling Starliner;

Ladies 18k White Gold Ring with 1.5 CT Round Diamond;

Ladies Platinum Gemstone Mother's Ring;

Ladies Diamond Engagement Style Ring;

Ladies Center Mounted Old European Cut Diamond Ring;Ladies Diamond and Gemstone Sterling Silver Pendant by David Yurman (2);

Ladies Diamond Wedding Band, .51CTS TW; and

Ladies Diamond Wedding Bang, .46CTS TW;

xxii. Additional farm/personal property owned by STEPHEN C. PETERS, 5237 Theys Road, Raleigh, NC 27606, including:

Well Pumps (2);

Saddles, Tack and equipment;

Irrigation Equipment;

TR3 Arena Drag Rake;

John Deere X534 Lawn Tractor;

Leaf Vacuum, Model 795007, SR#87919;

Frontier MC 1108 Manure Spreader; and

Kawasaki FX850V Lawnmower, SR#160609;

27

xxiii. Art/Paintings owned in the name of STEPHEN C. PETERS, 5237 Theys Road, Raleigh, NC 27606, including:

 Painting, "Spring" by Guido Borelli;

 Painting, "Dress Rehearsal" by Delano Holland; and

 Painting of AMY PETERS and her horse; and

xxiv. 2014 All Terrain Vehicle.

xxv. Gross proceeds of the offenses in the amount of $15,317,501.46.

If any of the above-described forfeitable property, as a result of any act or omission of the defendants --

 (1) cannot be located upon the exercise of due diligence;

 (2) has been transferred or sold to, or deposited with, a third person;

 (3) has been placed beyond the jurisdiction of the court;

 (4) has been substantially diminished in value; or

 (5) has been commingled with other property which cannot be subdivided without difficulty --

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) (made applicable by Title 18, United States Code, Sections 982(b)(1) or Title 28, United States Code, Section 2461(c)), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

28

**REDACTED VERSION**

A TRUE BILL Pursuant to the E-Government Act and the federal rules, the unredacted version of this document has been filed under seal.

_____

FOREPERSON

DATE: _12/19/17_____

ROBERT J. HIGDON, JR.
United States Attorney

_____
BY: WILLIAM M. GILMORE
Assistant United States Attorney

29