UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:17-CR-411-1D(3)

UNITED STATES OF AMERICA )
)
v. ) **SUPPLEMENTAL DECLARATION IN**
) **SUPPORT OF AMENDED RESTRAINING**
) **ORDER**
STEPHEN CONDON PETERS ) 28 U.S.C. § 1746
) (Filed Under Seal)


Your Declarant, David Harding, states the following
under penalty of perjury:

A. **IDENTITY AND EXPERIENCE OF DECLARANT**

(1)     DECLARANT, David Harding, is a Special Agent with
Federal Bureau of Investigation assigned to the
Charlotte, North Carolina Field Office with duty in the
Raleigh Resident Agency.  I have been employed as a
Special Agent with the FBI since 2012 and have worked a
variety of federal criminal investigations, including
but not limited to complex financial crimes.

(2)     The information contained in this declaration has
been obtained from various sources.  These sources
include my own personal investigation and the review of
reports and evidence gathered by federal law enforcement
officers.

(3)     This declaration contains only those facts which
are sufficient and necessary to promote the purpose of
the affidavit, described below.  This declaration should
not be construed to contain all facts known to your
affiant and the investigating agencies regarding the
matter under investigation and is only a supplement to
other declarations provided in this case.

B. **PURPOSE OF THE DECLARATION**

(4)     I make this declaration under Title 21, United
States Code, Section 853(e)(1)(B) to preserve the
availability of additional property subject to
forfeiture pursuant to Title 18, United States Code,
Section 982 (Criminal Forfeiture) and Section 853(b)(1)

(making procedures of §853 applicable to forfeitures under §982).

(5)     Specifically, this declaration both redacts, and supplements prior declarations by me concerning entry of a Temporary Restraining Order and Post-Indictment Restraining Order to prevent the dissipation of certain assets, referred to herein as the "Subject Assets." Redactions have been made to protect the manner and means of the investigation to date, and to promote the integrity of the ongoing investigation until its conclusion. The Subject Assets are traceable to certain federal offenses, referred to herein as the "Subject Offenses." The Subject Offenses are identified as follows:

- Wire Fraud, in violation of Title 18, United States Code, Section 1343,

- Investment Advisor Fraud, in violation of Title 15, United States Code, Section 80b-6 and 80b-17,

- Deception in Connection with the Sale of Unregistered Securities, in violation of Title 15, United States Code, Section 78j(b), 78ff(a), and 17 C.F.R. 240.10b-5, and

- Conducting Transactions in Criminally Derived Property, in violation of Title 18, United States Code, Section 1957.

## C. STATEMENT OF PROBABLE CAUSE THAT THE SUBJECT OFFENSES HAVE BEEN / ARE BEING COMMITTED

(6)     Probable cause exists to believe that the Subject Offenses have been committed.

(7)     During times material to this declaration, STEPHEN PETERS (hereinafter SPETERS), along with his wife, AMY PETERS (hereinafter APETERS), owned VQ Wealth, LLC aka VisionQuest Wealth, LLC (VQW), a registered LLC in the state of North Carolina. In addition to VQW, SPETERS also owned VisionQuest Wealth Management, LLC (VQWM) and VisionQuest Capital, LLC (VQC), both also registered in the state of North Carolina. All three companies shared business address, 112 East Hargett Street, Suite B, Raleigh, North Carolina 27601.

Case 5:17-cr-00411-D    Document 25    Filed 03/21/18    Page 2 of 21

(8)     SPETERS used VQW as a holding company to transfer
funds to and from VQC and VQWM.  APETERS was responsible
for the accounting records of VQW, and maintained them
separate and apart from the books of VQWM and VQC.
APETERS did not work at the offices of VQWM and VQC, but
rather at her home, 5237 Theys Road, Raleigh, North
Carolina 27606.  SPETERS and APETERS also used VQW to
transfer funds to their personal accounts.

(9)     VQWM was an investment advisory firm registered
with the Securities Exchange Commission (hereinafter
SEC). As a registered investment advisory (RIA) firm,
VQWM was subject to regulation and oversite by the SEC,
to include periodic examination and reviews of
compliance. SPETERS maintained a Series 65 Investment
Advisor Representative license, also registered with the
SEC. As a Series 65 Investment Advisor, SPETERS had a
fiduciary responsibly to his clients and was subject to
annual professional education requirements.

(10)    VQC, registered in North Carolina in 2008, was a
company described on its website as specializing in
acquisitions and financing for small-to-medium sized,
privately held companies and real estate investments.
SPETERS and VQWM employees obtained funding for these
investments from individual investors who in turn were
given a VQC promissory note.  The promissory notes
guaranteed an 8% rate of return if interest was paid out
or 9% if interest was reinvested in the note.  Investors
were told that these investments were illiquid and
carried a maturity of 5 years.  Based on the nature of
this offering and VQC's later filing with the SEC in
October 2016, the company was subject to oversight by
the SEC.

(11)    While your declarant and others continue to
investigate the sale and use of approximately $13
Million in VQC promissory note proceeds, the
investigation has uncovered not less than $3.4 Million
in transfers to personal accounts belonging to SPETERS
and APETERS.  Additionally, SPETERS used investor funds
to expand his own investment advisory firm, VQWM, to
construct a vacation home in Costa Rica in which SPETERS
claims ownership, and to pay principal and interest to
other VQC investors, rather than placing the funds into
genuine investments.  Many of the foregoing transfers
of proceeds of the underlying fraud upon VQC investors

exceeded $10,000, and were affected through interstate bank wire transfers.

(12)   Your declarant has learned that to carry out the scheme, and to conceal his embezzlement, SPETERS abused his joint control over VQW, VQWM, and VQC. No one at VQWM and VQC, except SPETERS and APETERS, had access to the accounting records and bank accounts for VQW. Your declarant's investigation has revealed that when new investor money was wired into VQC accounts, SPETERS would pull the money from VQC into VQW, where it was no longer possible for VQWM or VQC employees to tell how the money was used.

(13)   Your declarant has conducted a preliminary financial review of the transfers from VQC to VQW. To date, this review confirms that from January, 2012 to May, 2017, approximately $7.6 Million of VQC investor promissory note funds were transferred from VQC to VQW.

(14)   With respect to the direct embezzlement of $3.4 Million in investor funds, SPETERS admitted in a recorded statement in 2017 that he personally took between $4.3 and $4.8 million from the VisionQuest entities. Notably, this is roughly one third of all of the VQC principal investments under investigation. SPETERS explained that he did not want to pay taxes on the money, and that he has not paid taxes on it. SPETERS further states that he extracted some $738,000 in 2012 to build out his house (Whispering Hope Farm).

(15)   Your declarant's preliminary financial review has confirmed that SPETERS fraudulently extracted not less than $3.4 Million in VQC funds. Out of the $7.6 Million in VQC investor transfers to VQW, approximately $2.55 Million was transferred via wire transfer from VQW to personal accounts at Wells Fargo for SPETERS and APETERS.[1] These funds were not used on the purchase of revenue generating companies and properties as described by SPETERS to VQC investors, but rather for personal uses. SPETERS's use of VQW allowed SPETERS to conceal the use of the VQC funds from VQWM/VQC employees, investors, and regulators.

---

[1] Of the $3.4 Million in the transfers to SPETERS's personal accounts, approximately $850,000 appears to be related to the sale of a VQC asset in 2012, as opposed to the direct diversion of investor funds.

(16)     Preliminary review of SPETERS and APETERS personal accounts at Wells Fargo show that the $3.4 Million in embezzled funds were used for various personal and living expenses of SPETERS and APETERS. These included maintaining Whispering Hope Farm (herein referred to as The Farm), located in Raleigh, NC. Notably, The Farm was also purchased using funds transferred from VQW accounts, which were in turn funded primarily by VQC promissory debt notes. Records reviewed by your declarant further confirm that The Farm is listed as a personal asset of SPETERS and APETERS, not an asset of VQC. Moreover, The Farm is the personal residence of SPETERS and APETERS.

(17)     VQC does not possess the $13 Million in principal required to pay back VQC investors. In fact, in a document seized from VQC, SPETERS valued VQC holdings at not more than $2.3 Million. Of this amount, SPETERS attributed $1.5 Million in value to a Costa Rican property that is, in fact, owned by SPETERS and APETERS, not VQC. As such, actual assets of VQC amount to only approximately $810,000. This is insufficient to repay the $13 Million in principal owed to VQC investors.

(18)     Focusing just on the $3.4 Million in embezzled investor funds, this amount exceeds the funds which have been restrained pursuant to the Restraining Order (RO). With respect to the assets referenced in the RO, the present, conservative value of each asset is as follows:

- Asset 1 – VisionQuest Capital LLC – BB&T Account 5200822538: $6,728.76 (account balance)

- Asset 2 – VQ Wealth LLC – BB&T Account 5200802618: $2,179.89 (account balance)

- Asset 3 – VQ Wealth LLC – BB&T Account 5200802596: $2,732.77 (account balance)

- Asset 4 – VQ Wealth Management LLC – BB&T Account 5200822511: $330,000 (account balance)

- Asset 5 – Stephen and Amy Peters – Wells Fargo Account 1010131401732: $609.73 (account balance)

- Asset 6 - 5237 Theys Road, Raleigh, North Carolina 27601: $709,998 (Tax value)

- Asset 7 – Costa Rica – House of the Beloved Princess: $1.5 Million (SPETERS statements)

- Asset 8 – Whispering Hope Farm LLC – Bank of America Account 237025965236: $5,247.82 (account balance)

- Asset 9 – Harris Peters LLC – Bank of America Account 237025688254: $460.01 (account balance)

- Asset 10 – 2014 All Terrain Vehicle: $7,818 (purchase money)

- Asset 11 – A Horse Named Cartagena: $5,000 (purchase money)

- Asset 12 – A Horse Named Princess: $4,000 (purchase money)

- Asset 13 – 2014 Cadillac Escalade: $44,649 (SPETERS asset statement)

There are, however additional assets which are directly traceable to unlawfully gained proceeds, as follows:

- Asset 14 – Breitling Bentley B05 Unitime watch: $10,237 (purchase money)

- Asset 15 – Breitling Bentley 6.75 watch: $7,388 (purchase money)

- Asset 16 – Colt LE6920 rifle with two magazines: $1,228 (purchase money)

- Asset 17 – Benelli Super Vinci, 12 gauge, 28 inch barrel: $1,620 (purchase money)

- Asset 18 – Two 2016 Polaris Sportsman 450 H.O. ATVS: $19,000 (purchase money)

- Asset 19 – A horse named Hugo Boss: $33,250 (purchase money)

- Asset 20 – 2012 Toyota Tundra Crew Cab: $30,738 (purchase money)

- Asset 21 – 2014 Adam 2-horse trailer: $8,432 (purchase money)

- Asset 22 – TR3 arena drag rake: $5,255 (purchase money)

- Asset 23 – John Deere X500 Select lawn tractor: $10,599 (purchase money)

- Asset 24 – 2012 John Deere 4520 compact utility tractor: $31,000 (purchase statement)

- Asset 25 - 2012 John Deere 550 Gator: $10,800 (purchase statement)

- Asset 26 - John Deere 400x loader: $4,900 (purchase statement)

- Asset 27 - John Deere MX6 rotary/flail cutter: $2,750 (purchase statement)

- Asset 28 - Frontier D400 post hole digger: $1,900 (purchase statement)

- Asset 29 - Frontier 109 auger: $350 (purchase statement)

- Asset 30 – Stephen Peters – First Charter Bank Account number ending in 6245

- Asset 31 – Amy Peters – Woodforest National Bank account number ending in 9013

(19) Therefore, even under an Amended Restraining Order, the total restrained assets would only amount to approximately $2,619,323.98. This is well beneath the even the most conservative fraud under investigation – the direct embezzlements -- which alone amount to approximately $3.4 Million.

(20) The assets listed above as Assets 1 – 13 have already been restrained and are those assets which, at the time restraint was sought, were those traced to the fraud under investigation. The Government did not at that time seek to seize other assets belonging to SPETERS, APETERS, VQC, VQW, or VQWM that had not yet been traced to illegal proceeds. During the course of search warrant executions, agents recovered a personal financial statement for SPETERS and APETERS. This financial statement indicated that SPETERS and APETERS

possessed in excess of $400,000 in assets that have not been restrained. These unrestrained assets include IRA accounts, 529 accounts, outstanding promissory notes, and valuable watches. This supplemental declaration sets forth additional facts that trace the assets listed as Assets 14 – 31 to illegal proceeds.

## D. STATEMENT OF PROBABLE CAUSE THAT THE SUBJECT ASSETS CONSTITUTE PROCEEDS OF THE SUBJECT OFFENSES

**Asset 1 – VisionQuest Capital LLC – BB&T Account 5200822538**

(21)    There is probable cause to believe that not less than $10 Million dollars in funds constituting the proceeds of the scheme to defraud described above are/were held in VisionQuest Capital LLC BB&T Bank account number 5200822538 (herein tainted Asset 1). Review of the BB&T bank account by investigators from April 2012 to April 2017, show the funds coming into this account are almost exclusively funds received from VQC investor promissory notes and funds from Related Parties. Again, not less than $10 Million dollars flowing into this account are directly from VisionQuest Capital investors who purchased the promissory notes described herein. A substantial number of these transactions were in criminally derived property and were in excess of $10,000.

**Asset 2 – VQ Wealth LLC – BB&T Account 5200802618**

(22)    There is probable cause to believe that not less than approximately $5.8 Million dollars in funds constituting the proceeds of the scheme to defraud described above are/were held in VQ Wealth LLC BB&T Bank account number 5200802618 (herein tainted Asset 2).

(23)    Review conducted by investigators and forensic accountant determined funds totaling not less than $8.9 Million dollars[2] of traced fraud proceeds were transferred from tainted Asset 1 to tainted Asset 2, of that amount approximately $3.1 Million dollars was transferred back to tainted Asset 1.

---

[2] Of the $8.9 Million in the transfers to Asset 2 from Asset1, approximately $1.3 Million appears to be related to the dale of a VQC asset, as opposed to the direct diversion of investor funds.

(24) Review by investigators and forensic accountant of tainted Asset 2 showed on approximately twenty two occasions from September 2012 through April 2017 as the balance in tainted Asset 2 reached or almost reached zero, a transfer in from tainted Asset 1 provided an influx of funds constituting the proceeds of the scheme to defraud. A substantial number of these transactions were in criminally derived property and were in excess of $10,000.

**Asset 3 - VQ Wealth LLC - BB&T Account 5200802596**

(25) There is probable cause to believe that not less than approximately $2.1 Million dollars in funds constituting the proceeds of the scheme to defraud described above are/were held in VQ Wealth LLC BB&T Bank account number 5200802596 (herein tainted Asset 3).

(26) As noted in the preceding subheading, review conducted by investigators and forensic accountant determined funds totaling not less than $8.9 Million dollars[3] of traced fraud proceeds were transferred from tainted Asset 1 to tainted Asset 2.

(27) Review by investigators of tainted Asset 3 showed approximately $2.2 Million dollars of traced fraud proceeds transferred into tainted Asset 3 from tainted Asset 2. Additionally, approximately $30,000 was transferred into Asset 3 from tainted Asset 1, after which $168,000 was transferred back to tainted Asset 1. Therefore approximately $2.1 Million dollars in funds constituting the proceeds of the scheme to defraud remained in tainted Asset 3.

(28) Review by investigators of tainted Asset 3 showed on approximately one hundred occasions from May 2012 through February 2017 as the balance in tainted Asset 2 reached or almost reached zero, a transfer in from tainted Asset 2 provided an influx of funds constituting the proceeds of the scheme to defraud. A substantial number of these transactions were in criminally derived property and were in excess of $10,000.

---

[3] Of the $8.9 Million in the transfers to Asset 2 from Asset1, approximately $1.3 Million appears to be related to the dale of a VQC asset, as opposed to the direct diversion of investor funds.

Case 5:17-cr-00411-D   Document 25   Filed 03/21/18   Page 9 of 21

**Asset 4 – VQ Wealth Management LLC – BB&T Account 5200822511**

(29)     There is probable cause to believe that not less than approximately $1.39 Million dollars in funds constituting the proceeds of the scheme to defraud described above are/were held in VQ Wealth Management LLC BB&T Bank account number 5200822511 (herein tainted Asset 4).

(30)     Review by investigators of tainted Asset 4 bank account showed approximately $106,000 was transferred in from tainted Asset 1, of which $10,000 was returned to tainted Asset 1, leaving $96,000 of traced fraud proceeds in tainted Asset 4. Per review these funds were to pay for the purchase of a RIA as described in the declaration. Per interviews of investors, numerous were unaware that VQC investments would go toward the expansion of SPETERS's own RIA. Further review by investigators of tainted Asset 4 showed approximately $2.9 Million dollars was transferred into tainted Asset 4 from tainted Asset 2, of which $1.6 Million dollars was returned to tainted Asset 2, leaving approximately $1.3 Million dollars of traced fraud proceeds in tainted Asset 4.

(31)     Review by investigators of tainted Asset 4 showed on approximately sixty occasions, from May 2012 through April 2017, when the balance in tainted Asset 4 was lower than usual, or close to zero, a transfer was received from tainted Asset 2. This provided an influx of funds constituting the proceeds of the scheme to defraud to tainted Asset 4. Of the approximate sixty instances above approximately four were used to purchase or reimburse VQWM for the purchase of RIAs and approximately nine were tied closely with the payment of a credit card. A substantial number of these transactions were in criminally derived property and were in excess of $10,000.

**Asset 5 – Stephen and Amy Peters – Wells Fargo Account 1010131401732**

(32)     There is probable cause to believe that not less than approximately $3.5 Million dollars in funds constituting the proceeds of the scheme to defraud described above are/were held in Stephen and Amy Peters

– Wells Fargo Account 1010131401732 (herein tainted Asset 5).

(33)    Review by investigators of the bank account records for tainted Asset 2, tainted Asset 3, and tainted Asset 4 show from April 2012 to April 2017 approximately $3.5 Million dollars in traceable fraud proceeds were transferred into tainted Asset 5. Further detailed, approximately $1.8 million dollars of traceable fraud proceeds were transferred from tainted Asset 3, approximately $1.69 Million dollars was transferred from tainted Asset 2, and approximately $57,000 was transferred from tainted Asset 4, all into tainted Asset 5. Preliminary review of the tainted Asset 5 shows the primary funding for the account was received as described above, not from legitimate sources.    A substantial number of these transactions were in criminally derived property and were in excess of $10,000.

**Asset 6 - 5237 Theys Road, Raleigh, North Carolina 27601**

(34)    There is probable cause to believe that not less than approximately $160,000 in funds constituting the proceeds of the scheme to defraud described above are/were held in the Harris-Peters LLC which holds the property 5237 Theys Road, Raleigh, North Carolina 27601 (herein tainted Asset 6).

(35)    Tainted Asset 6 is the residence of SPETERS and APETERS located at 5237 Theys Road, Raleigh, North Carolina 27606 and deeded to the Harris-Peters, LLC. Interviews of employees and document review show the Harris-Peters, LLC, is managed by SPETERS and is registered to the VQW, VQWM, and VQC office address of 112 E. Hargett Street, Suite B, Raleigh, North Carolina 27601.

(36)    Per review of tainted Asset 5, it was noted on or about September 9, 2012, a transfer of $160,000 was made out of tainted Asset 5 to the Harris-Peters LLC at Bank of America. This wire was funded by a $160,000 wire from tainted Asset 2 on or around the same day, September 6, 2012. Further the funding for the $160,000 wire from tainted Asset 2 came from an $80,000 wire from tainted Asset 1 on or about August 31, 2012, and a wire of approximately $150,000 from a related party.    These

transactions were in criminally derived property and were in excess of $10,000.

(37)   Further review of tainted Asset 5 showed monthly transfers from tainted Asset 5 to the Harris-Peters LLC holding company of Asset 6 from October 2016 through May 2017 totaling approximately $13,775.

**Asset 7 – Costa Rica – House of the Beloved Princess**

(38)   There is probable cause to believe that not less than $830,000 in funds constituting the proceeds of the scheme to defraud described above were used for the purchase, construction, landscaping, furnishing, taxes, insurance and other costs of a property in Costa Rica identified as "The House of the Beloved Princes" (herein tainted Asset 7).

(39)   Financial review of tainted Asset 1, the VQC BB&T Bank account ending in 8538, showed the following funds being paid for the purchase, construction, landscaping, furnishing, taxes, insurance and other costs of tainted Asset 7 from March 2016 through April 2017 totaling approximately $839,413. The payments were made directly from tainted Asset 1 to vendors associated with the tainted Asset 7 and were identified by the memos provided in the bank records of tainted Asset 1, for example "Costa Rica", "CR insurance", "CR lot 88 fees", "Final pymt CR furniture", "CR house", "2nd payment Costa Rica home", and "CR home landscaping". A substantial number of these transactions were in criminally derived property and were in excess of $10,000.

(40)   Per employee interviews and document review, tainted Asset 7 is a vacation home/rental property built using VQC funds as shown above but owned by SPETERS and APETERS. APETERS was also identified as "AMY MARIE PATERS" in the Costa Rican documents. Per Costa Rican records tainted Asset 7 is identified as "Casa de la Amada Princesa," or "The House of the Beloved Princess," located in Coco Bay, Costa Rica within the gated community of Coco Bay Estates (Lot 88). Further identified as Costa Rica Entity #3-102-657027 and Costa Rica Entity #3-102-493198. This residence is 7,348 square feet and is listed for rent on Vacation Rentals By Owner (VRBO).

(41) The investigation has shown that the House of the Beloved Princess is held in the name of SPETERS and APETERS, not VQC. Additionally, a website for the house represents SPETERS and APETERS as "The Owners", and includes a photograph of SPETERS, APETERS, and family.

**Asset 8 - Whispering Hope Farm LLC - Bank of America Account 237025965236**

(42) There is probable cause to believe that not less than approximately $160,000 dollars in funds constituting the proceeds of the scheme to defraud described above are/were held in Whispering Hope Farm LLC - Bank of America Account number 237025965236 (herein tainted Asset 8). The members in Whispering Hope Farm LLC are Stephen and Amy Peters. The signatories on the bank account are unknown.

(43) Review by investigators of the bank account records from tainted Asset 5 from December 2014 through April 2017 show approximately $160,000 dollars in traceable fraud proceeds were transferred into tainted Asset 8. Preliminary review of the transfers into tainted Asset 8 show the transfers in criminally derived property were monthly in nature and multiple transfers were in excess of $10,000.

**Asset 9 - Harris-Peters LLC - Bank of America Account 237025688254**

(44) There is probable cause to believe that not less than approximately $210,000 dollars in funds constituting the proceeds of the scheme to defraud described above are/were held in Harris-Peters LLC - Bank of America Account number 237025688254 (herein tainted Asset 9). The manager of Harris-Peters LLC is Stephen Peters. The signatory on the bank account Stephen Peters.

(45) Review by investigators of the bank account records from tainted Asset 5 from September 2012 through April 2017 show approximately $210,000 dollars in traceable fraud proceeds were transferred into Asset 9. As described in Asset 6, on September 9, 2012, a transfer of approximately $160,000 was made out of Asset 5 to the Harris-Peters LLC. It has been recently identified that

the $160,000 flowed through tainted Asset 9 before purchasing 5237 Theys Road, Raleigh, North Carolina. An additional amount of approximately $50,000 in traceable fraud proceeds was funneled from tainted Asset 5 to tainted Asset 9. Preliminary review of the transfers into tainted Asset 9 show the transfers in criminally derived property were monthly in nature and the $160,000 transfer was in excess of $10,000.

### Asset 10 - 2014 All Terrain vehicle

(46)  There is probable cause to believe that not less than approximately $7,818 dollars in funds constituting the proceeds of the scheme to defraud described above are/were held by Stephen Peters, Amy Peters - Wells Fargo Account number 1010131401732 (Asset 5) and used for the purchase and payments of a 2014 All Terrain vehicle. (herein tainted Asset 10).

(47)  Review by investigators of the bank account records from tainted Asset 15 show 31 payments of $252.18 made from July 2014 to April 2017 from tainted Asset 5. As noted in paragraph 46, a substantial number of transactions flowing into Asset 5 were in criminally derived property and were in excess of $10,000.

### Asset 11 - A Horse named Cartagena

(48)  There is probable cause to believe that not less than approximately $5,000 dollars in funds constituting the proceeds of the scheme to defraud described above are/were used for the purchase of a Horse named Cartagena (herein tainted Asset 11).

(49)  Review by investigators of the bank account records from tainted Asset 5 show on or around June 5, 2014 check number 3952 was written to CRFEquestrian for $5,000 from tainted Asset 5. The memo on check number 3952 stated "Purchase of Cartagena." As noted in paragraph 46, a substantial number of transactions flowing into tainted Asset 5 were in criminally derived property and were in excess of $10,000.

### Asset 12 - A Horse named Princess

(50)  There is probable cause to believe that not less than approximately $4,000 dollars in funds constituting the proceeds of the scheme to defraud described above

are/were used for the purchase of a Horse named Princess (herein tainted Asset 12).

(51)     Review by investigators of the bank account records from tainted Asset 5 show on or around November 14, 2013 check number 3636 was written to Krista Jones for $4,000 from tainted Asset 5. The memo on check number 3636 stated "Purchase of Princess." As noted in paragraph 46, a substantial number of transactions flowing into tainted Asset 5 were in criminally derived property and were in excess of $10,000.

**Asset 13 - 2014 Cadillac Escalade**

(52)     There is probable cause to believe that not less than approximately $56,352 dollars in funds constituting the proceeds of the scheme to defraud described above are/were held in VisionQuest Capital LLC – BB&T Account number 5200822538 (tainted Asset 1) and used for the purchase and payments of a 2014 Cadillac Escalade. (herein tainted Asset 13).

(53)     Review by investigators of the bank account records from tainted Asset 1 show 15 payments of $799.50, one payment of $804.50, and one payment of $43,554.73 made from June, 2014 to October, 2015 from tainted Asset 1. These transactions were in criminally derived property and the payment of $43,554.73 was in excess of $10,000.

**Asset 14 - A Breitling Bentley B05 Unitime watch**

(54)     There is probable cause to believe that not less than approximately $10,273 dollars in funds constituting the proceeds of the scheme to defraud described above are/were held by Stephen Peters, Amy Peters in tainted Asset 5 and used for the purchase and payments of a Breitling Bentley B05 Unitime watch. (herein tainted Asset 14).

(55)     Review by investigators of the USAA credit card account x5669 and bank account records show tainted Asset 14 was purchased using the USAA credit card account x5669 on 01/04/2016.   The payment of the credit card relating to the purchase of tainted Asset 14 was from Asset 5 on or about 01/14/2016.

**Asset 15 - A Breitling Bentley 6.75 watch**

(56)     There is probable cause to believe that not less than approximately $7,388 dollars in funds constituting the proceeds of the scheme to defraud described above are/were held by Stephen Peters, Amy Peters in tainted Asset 5 and used for the purchase and payments of a Breitling Bentley 6.75 watch. (herein tainted Asset 15).

(57)     Review by investigators of the USAA credit card account x5669 and bank account records show tainted Asset 15 was purchased using USAA credit card account x5669 on 01/04/2016.     The payment of the credit card relating to the purchase of tainted Asset 15 was from tainted Asset 5 on or about 02/08/2016.     It was noted that although the transaction occurred on 01/04/2016, the charge did not post to the credit card until 01/23/2016.

**Asset 16 - A Colt LE6920 rifle with two magazines**

(58)     There is probable cause to believe that not less than approximately $1,228 dollars in funds constituting the proceeds of the scheme to defraud described above are/were held by Stephen Peters, Amy Peters in tainted Asset 5 and used for the purchase and payments of a Colt LE6920 rifle with 2 magazines. (herein tainted Asset 16).

(59)     Review by investigators of the USAA credit card account x5976 and bank account records show tainted Asset 16 was purchased using USAA credit card account x5976 on 11/20/2011.     The payment of the credit card relating to the purchase of tainted Asset 16 was from tainted Asset 5 on 12/16/2011.

**Asset 17 - A Benelli Super Vinci, 12 gauge, 28 inch barrel**

(60)     There is probable cause to believe that not less than approximately $1,620 dollars in funds constituting the proceeds of the scheme to defraud described above are/were held by Stephen Peters, Amy Peters in tainted Asset 5 and used for the purchase and payments of a Benelli Super Vinci, 12 gauge, 28 inch barrel. (herein tainted Asset 17).

(61)     Review by investigators of the USAA credit card account x5976 and bank account records show tainted asset 17 was purchased using USAA credit card account x5976 on 11/20/2011.    The payment of the credit card relating to the purchase of tainted Asset 17 was from tainted Asset 5 on 12/16/2011.

### Asset 18 - Two 2016 Polaris Sportsman 450 H.O. ATVS

(62)     There is probable cause to believe that not less than approximately $19,000 dollars in funds constituting the proceeds of the scheme to defraud described above are/were held by tainted Asset 1 and used for the purchase of two 2016 Polaris Sportsman 450 H.O. ATVs. (herein tainted Asset 18).

(63)     Review by investigators of the bank account records show tainted Asset 18 was purchased on or around 01/17/2017 with a wire transfer from tainted Asset 1 to Banco Nacional de Costa Rica for the benefit of David Garcia Restrepo.

### Asset 19 - A horse named Hugo Boss

(64)     There is probable cause to believe that not less than approximately $33,250 dollars in funds constituting the proceeds of the scheme to defraud described above were held by and transferred through tainted Assets 1, 2, 3, 5 and used for the purchase of a horse named Hugo Boss. (herein tainted Asset 19).

(65)     Review by investigators of the bank account records show the funds used for the purchase of tainted Asset 19 came from tainted Asset 1 and were transferred through tainted Assets 2, 3, and 5 before flowing through accounts that are now closed.    Tainted Asset 19 was purchased on or around 03/14/2013 with a wire transfer to Wysiwyg, LLC from a now closed account.

### Asset 20 - A 2012 Toyota Tundra Crew Cab

(66)     There is probable cause to believe that not less than approximately $30,738 dollars in funds constituting the proceeds of the scheme to defraud described above are/were held by tainted Asset 8 and used for the purchase of a 2012 Toyota Tundra Crew Cab. (herein tainted Asset 20).

(67)    Review by investigators of the bank account records
show tainted asset 20 was purchased on or around
10/13/2015 with a wire transfer from tainted Asset 8 to
Southeast Toyota Finance.

**Asset 21 - A 2014 Adam 2-horse trailer**

(68)    There is probable cause to believe that not less
than approximately $8,432 dollars in funds constituting
the proceeds of the scheme to defraud described above
are/were held by tainted Asset 8 and used for the
purchase of a 2014 Adam 2-horse trailer. (herein tainted
Asset 21).

(69)    Review by investigators of the bank account records
show tainted Asset 21 was purchased on or around
10/07/2015 with a wire transfer from tainted Asset 8 to
Sheffield Financial.

**Asset 22 - A TR3 arena drag rake**

(70)    There is probable cause to believe that not less
than approximately $5,255 dollars in funds constituting
the proceeds of the scheme to defraud described above
are/were held by two different bank accounts, both in
the name of Whispering Hope Farm; Wells Fargo account
number 2019177621 (funded by tainted Asset 5) and
tainted Asset 8.    Both accounts were used for the
purchase and payments of a TR3 arena drag rake. (herein
tainted Asset 22).

(71)    Review by investigators of the bank account records
show tainted Asset 22 was purchased with multiple
payments to Sheffield Financial. From around November
2012 to August 2013 approximately $2,163 was paid from
now closed Wells Fargo account number 2019177621 which
was primarily funded by tainted Asset 5.   From around
September 2013 to October 2015 approximately $3,092 was
paid from tainted Asset 8.

**Asset 23 - A John Deere X500 Select lawn tractor**

(72)    There is probable cause to believe that not less
than approximately $10,599 dollars in funds constituting
the proceeds of the scheme to defraud described above
are/were held by two different bank accounts, both in
the name of Whispering Hope Farm; Wells Fargo Account

number 2019177621 (funded by tainted Asset 5) and tainted Asset 8. Both accounts were used for the purchase and payments of a John Deere X500 Select lawn tractor. (herein tainted Asset 23).

(73)   Review by investigators of the bank account records show tainted Asset 23 was purchased with multiple payments to John Deere Financial. From around October 2012 to September 2013 approximately $2,066 was paid from now closed Wells Fargo account number 2019177621 which was primarily funded by tainted Asset 5. From around November 2013 to October 2015 approximately $8,533 was paid from tainted Asset 8.

**Asset 24 - A 2012 John Deere 4520 compact utility tractor**

**Asset 25 - A 2012 John Deere 550 Gator**

**Asset 26 - A John Deere 400x loader**

**Asset 27 - A John Deere MX6 rotary/flail cutter**

**Asset 28 - A Frontier D400 post hole digger**

**Asset 29 - A Frontier 109 auger**

(74)   There is probable cause to believe that not less than approximately $45,887 dollars in funds constituting the proceeds of the scheme to defraud described above are/were held by two different bank accounts, both in the name of Whispering Hope Farm; Wells Fargo Account number 2019177621 (funded by tainted Asset 5) and tainted Asset 8. Both accounts were used for the purchase and payments of the foregoing machinery and equipment (herein tainted Assets 24-29):

(75)   Review by investigators of the bank account records show tainted Assets 24-29 were purchased with multiple payments to John Deere Financial. From around October 2012 to September 2013 approximately $10,766 was paid from now closed Wells Fargo account number 2019177621 which was primarily funded by tainted Asset 5. From around October 2013 to December 2015 approximately $35,121 was paid from tainted Asset 8.

**Asset 30 - Stephen Peters – First Charter Bank Account number ending in 6245**

(76)    There is probably cause to believe that not less than $41,000 in rental income constituting the proceeds of the scheme to defraud described above are/were held in Stephen Peters First Charter Bank account ending in 6245 (herein tainted Asset 30).    There is probable cause to believe that either Stephen and/or Amy Peters are either owners or authorized signors on the account. There is also probable cause to believe income derived from the renting of properties purchased with tainted assets 1-5, and 8, including an apartment above a stable at 5237 Theys Road (tainted Asset 6) and Casa de la Amada Princesa (tainted Asset 7) were deposited into this account.

(77)    Review by investigators of rental records showed approximately $41,000 was transferred into tainted Asset 30 from July 2017 through December 2017. The funds were for rentals conducted at VRBO975234 located at CoCo Bay Estates, Playa Del Coco, Guamacaste Province 50503. Further review of the rental records verified that VRBO975234 was the House of the Beloved Princes, known here as tainted Asset 7, therefore the funds transferred into Asset 30 were proceeds of an already restrained tainted Asset 7.

**Asset 31 - Amy Peters – Woodforest National Bank account number ending in 9013**

(78)    There is probable cause to believe that not less than $7,800 in rental income constituting the proceeds of the scheme to defraud described above are/were held in Amy Peters Woodforest National Bank account ending in 9013 (herein tainted Asset 31). There is probable cause to believe that either Stephen and/or Amy Peters are either owners or authorized signors on the account. There is also probable cause to believe income derived from the renting of properties purchased with tainted assets 1-5, and 8, including an apartment above a stable at 5237 Theys Road (tainted Asset 6) and Casa de la Amada Princesa (tainted Asset 7) were deposited into this account.

(79)    Review by investigators of rental records showed approximately $7,800 was transferred into tainted Asset 31 from July 2017 through December 2017. The funds were for rentals conducted at VRBO761312 located at 5237 Theys Road, Raleigh, North Carolina, known here as tainted Asset 6. Further review of the rental records

verified that VRBO761312 was the Whispering Hope Stables apartment on the property of tainted Asset 6, therefore the funds transferred into Asset 31 were proceeds of an already restrained tainted Asset 6.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of March, 2018.

DAVID HARDING
Special Agent, FBI